MAUPIN, Administrator, Respondent, v. MOBRIDGE STATE
BANK, Appellant.

(161 N. W. 332.)

(File No. 4005.    Opinion filed February 16, 1917.    Rehearing denied
March 22, 1917.)

1. **Evidence—Suit on Bank Deposit Certificates—Identity of—Cashier's Statement, Competency—Admissions as Hearsay, Harmless Error.**

In a suit against a bank on a certificate of deposit alleged to have been issued by defendant to plaintiff's intestate, where the defense was that another certificate of deposit than the alleged certificate sued on was issued to another person and had been paid, held, that evidence of the bank cashier's statements, made

to plaintiff and his attorney, to the effect that a certificate of deposit produced by him was the one "issued and delivered" to decedent, was admissible; he being the executive officer of the bank in charge of its business. Held, further, that even though such evidence were considered improper, its admission was harmless error, defendant's officers having testified to the deposit by decedent and to issuance of a certificate to him.

2. Same—Identity of Deposit Certificate—Secondary Evidence, Competency—Notice to Produce, as Foundation.

In a suit upon an alleged deposit certificate, whose existence was denied by defendant, notice by plaintiff to produce the alleged certificate sued on, constituted a proper foundation for admission of secondary evidence thereof, notwithstanding defendant produced another certificate which it claimed was the only one issued.

3. Same—Witness's Memorandum, No Independent Recollection, But Memorandum Verified, Competency—Modified Testimony, Effect.

In a suit upon a bank deposit certificate claimed by plaintiff to have been delivered to his intestate, a memorandum as to whom a certificate of deposit was made payable, made by plaintiff's attorney when examining a certificate produced by defendant bank, was admissible in evidence; witness having testified, after examining the memorandum, that he would have to rely upon the memorandum, he having no independent recollection of the contents of the certificate after using it, but that he knew the contents of the memorandum to be correct; and the fact that witness had in rebuttal modified the original testimony as to whom the certificate was made payable, did not render the memorandum incompetent, but only went to the probative value of the evidence.

4. Same—Rebuttal—Witness's Memorandum, Competency—Judicial Discretion.

In a suit upon a bank deposit certificate whose identity was in dispute, held, that a memorandum of the contents of a part of the alleged certificate, made by the witness, was properly admitted in evidence, while witness was testifying in rebuttal; such admission being a matter of judicial discretion.

5. Same—"Present Recollection Revived" versus "Past Recollection Recorded"—Instance of Latter, Competency of Memorandum.

When, after examining his memorandum, a witness does not recall the fact, but is able to testify that the memorandum is a true record of such facts, it is a case of "past recollection recorded," and not one of "present recollection revived," under rules of evidence; and such memorandum is admissible in evidence. So held, where, in a suit on an alleged bank deposit certificate, witness testified that a certificate which he had

examined was payable to order of plaintiff's intestate, by name, and thereafter, upon defendant's showing that its custom when issuing a certificate payable to a depositor was to write such certificate payable to "himself"—produced his memorandum of the contents of the certificate sued on, which itself showed the certificate made payable to "himself."

6.  **Demand—Demand of Payment—Time Deposit Certificate—Necessity of Demand.**

A demand of payment of a bank deposit certificate is unnecessary to establish a cause of action, where the certificate was a time certificate not payable upon demand, and which had already matured.

7.  **Banks and Banking—Endorsement of Deposit Certificate Sued On—When Bank May Not Require Evidence of.**

In a suit on a bank deposit certificate claimed to have been issued to plaintiff's intestate, defendant bank cannot raise the question of sufficiency of evidence of endorsement of the certificate by its owner or legal holder, the certificate being in wrongful possession of the bank and endorsed by one · of the payees and marked "paid;" especially where. bank's defense was that such certificate never existed.

8.  **Appeals—Sufficiency of Evidence—Imperfect Record, Presumptions Upon—Identity of Bank Deposit Certificates.**

In absence of original exhibit from the appeal record, the Supreme Court must presume that an examination of such records would disclose the claimed suspicious appearance of a bank certificate register, as well as differences in certain figures as printed in a deposit certificate produced by defendant bank, as compared with other figures constituting numbers on deposit certificates found in defendant's bank register.

9.  **Appeals—Sufficiency of Evidence—Identity of Bank Deposit Certificate.**

In a suit on a bank deposit certificate alleged to have been issued to plaintiff's intestate, held, that the evidence supports a finding that intestate made the deposit, that the certificate was issued to him, and that he was the owner thereof.

10.  **Banks and Banking—Suit on Deposit Certificate—Defense of Payment—Payment Without Endorsement, Burden of Proof Upon.**

In a suit upon an alleged bank deposit certificate, held, if defendant bank paid the certificate without a proper endorsement, it took the risk of the certificate belonging to another, and the burden of proof was upon it to prove payment to the rightful owner, and not upon plaintiff to disprove transfer of the certificate by his intestate.

Appeal from Circuit Court, Walworth County.   Hon. JOSEPH H. BOTTUM, Judge.

Action by Charles A. Maupin, administrator of the estate of William Ducheneaux, deceased, against the Mobridge State Bank, a corporation, to recover upon a bank certificate of deposit. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals.   Affirmed.

*Carpenter & Morrison,* and *Julius Skaug,* for Appellant.

*P. M. Burns,* and *Brown & Smith,* for Respondent.

(1) To point one of the opinion, Respondent cited: American Fur Co. v. United States, 2 Peters, 358; First National Bank v. Stewart, 114 U. S. 224, 29 L. Ed. 101; Prew v. S. D. Cent. Ry. Co., 156 N. W. 582, 71 N. W. 453; Simpson v. Waldby, 30 N. W. 199; Farmers & Mchanics Bank v. Butchers & Drovers Bank, 28 N. Y. 425; Encyclopedia of Evidence, Vol. 7, p. 939.

(2) To point two of the opinion, Respondent cited: First Ed. Am. & Eng. Encyc. of Law, Vol. 16, p. 857; Vol. 2, Encyc. of Ev. (Standard Procedure) p. 355, 376; Henderson v. State, 14 Tex. 503.

(3) To point three of the opinion, Appellant cited: 17 Cyc. 399, and note 33, and 1901-1913 and 1914-1916 Annotations to 17 Cyc. 399.

Respondent cited: Underhill on Criminal Evidence No. 217; Jones on Evidence, Vol. 2, p. 219.

(6) To point six of the opinion, Appellant cited: Tobin v. McKinney, (S. D.) 84 N. W. 228, on rehearing, 88 N. W. 572; 5 Am. & Eng. Encyc. 804; 5 Cyc. 221.

Respondent cited: First National Bank v. Security National Bank (15 L. R. A. p. 386); 7 Cyc. 955 and cases cited; Beardsley v. Weber, 62 N. W. 173; Myrick v. Bill et al., 17 N. W. 268.

WHITING, J.   Action on time certificate of deposit alleged to have been issued by defendant to plaintiff's intestate. Verdict was for plaintiff. From the judgment thereon and an order denying a new trial, defendant appeals.

Respondent alleged the deposit by his intestate, one William Ducheneaux, of $1,000 in appellant bank, in July, 1911, and the issuance of a certificate of deposit therefor payable to said William Ducheneaux or order; that the certificate was in the wrongful possession of appellant; that plaintiff as the administrator of the estate of said William Ducheneaux was the lawful owner and

entitled to the possession of such certificate; and that no part of said $1,000 had been paid. Appellant entered a general denial.

It is the contention of respondent, and, in order to justify its verdict, the jury must have found: That respondent's intestate did deposit such sum of money; that a certificate was issued payable to him; that, at the time of the deposit, a proper entry was made in appellant's certificate of deposit register, which entry showed that the deposit was made by respondent's intestate and certificate issued payable to him; that such entry was afterwards changed so as to show the certificate to have been issued payable to Jennie Ducheneaux; that on July 7, 1913, this certificate, payable to William Ducheneaux, was in appellant's bank, marked paid, and with the name of Jennie Ducheneaux indorsed thereon; that appellant afterwards substituted another certificate in place of the above certificate, which substituted certificate was drawn payable to Jennie Ducheneaux and, when brought into court, bore the indorsement of said Jennie Ducheneaux.

It was the contention of appellant: That the deposit was made by respondent's intestate for the benefit of his wife, Jennie Ducheneaux; that the record thereof in the bank books was properly made and never altered; that the certificate was drawn payable to said wife; that it was such certificate that was in appellant bank on July 7, 1913; that the bank never issued a certificate for said deposit payable to respondent's intestate; that the certificate it did issue was indorsed by the payee therein named, presented to the bank, and paid in full.

The evidence on behalf of respondent, upon his direct case tended to prove the following facts: Respondent and his attorney, one Burns, visited appellant bank on July 7, 1913, and, finding the cashier in charge, advised such cashier that respondent was the administrator of the estate of William Ducheneaux, deceased; that they were looking for information regarding a certain certificate of deposit issued by the bank and delivered to deceased in July or August; and that a certificate had been issued to deceased shortly prior to his death. The cashier looked at his records, produced a certificate, and said it was the one "issued and delivered" to deceased shortly prior to his death. The number of the certificate was 2022. The attorney read the certificate and was able to substantially give its contents. A demand was made

to produce the said certificate at the trial. It was not produced, but a certificate, Exhibit A, was produced, and the president of the bank testified that no such certificate as claimed by respondent was ever issued by the bank. Exhibit A was not the exhibit shown by the cashier. Later the attorney went to appellant bank and asked to see the certificate again, advising the president of the bank that the county judge wanted some disposition made of the matter. The president of the bank refused to show such certificate. The bank's register of certificates disclosed upon its face that the name "Jennie Ducheneaux," written thereon as the payee of certificate No. 2022, was written in different ink from the remainder of the record relating to such certificate. The bank bought its blank certificates in blocks; the certificates came numbered in consecutive order; and certificates 2020-2023, as well as some others, came in one block. Exhibit A, produced by appellant and claimed by it to be the certificate issued to deceased, disclosed upon its face that the figures "2" in the number "2022" were different from the figures "2" in Nos. "2020," "2021," and "2023."

[1] Appellant contends that the trial court erred in admitting evidence of what the cashier said to respondent and his attorney in relation to the certificate. It contends that such statements of the cashier were in the nature of admissions not binding upon appellant, because within the rule prohibiting hearsay evidence Appellant cites Plymouth County Bank v. Gilman, 3 S. D. 170, 52 N. W. 869, 44 Am. St. Rep. 782, and First National Bank of Canton v. North, 6 Dak. 136, 41 N. W. 736, 50 N. W. 621. An examination of these authorities clearly discloses that they are not in point. In both, the officer of the bank made statements touching the nature of, or the motive that influenceed, the conduct of the bank. If appellant's cashier had made a statement that the bank had wrongfully paid this certificate to Jennie Ducheneaux, such authorities would have been in point. The evidence was clearly admissible. The cashier was the executive officecr of the bank in charge of its business. Moreover, appellant's officers testified to the deposit being made by William Ducheneaux and to the issuance and delivery of the certificate to him. Even if evidence of the statement of the cashier to respondent and his attorney was improperly admitted—which it was not—the error

would have been cured by the testimony of appellant's officers. It is undisputed that the cashier did produce a certificate. The only dispute as to what took place there at the bank at that time is as to whether the certificate shown was a certificate payable to William Ducheneaux or was Exhibit A, which was payable to Jennie Ducheneaux.

[2] Secondary evidence of the contents of the alleged certificate was admitted over appellant's objection that no proper foundation had been laid for its reception. It was properly admitted. Appellant had been notified to produce such certificate. It denied that such a certificate ever existed and produced one which its president testified was the one issued and delivered to William Ducheneaux. Certainly no better foundation for receipt of secondary evidence could have been laid.

[3] As a part of respondent's direct case, Burns testified as to the contents of the certificate which he stated appellant's cashier showed on July 7, 1913. He testified that he could give its contents "substantially," and then purported to state such contents; a part being as follows: "Mr. William Ducheneaux has deposited in this bank one thousand dollars payable to the order of William Ducheneaux." Appellant introduced testimony tending to show that it was the custom of the bank, when issuing a certificate of deposit payable to the party who made the deposit; to write such certificate payable to "himself." Burns, being recalled upon rebuttal, testified that, when he was at the bank, from the certificate itself he made a memorandum of the contents of such certificate, that the memorandum was a correct statement of the things taken from the certificate, and that he had no independent recollection of the exact wording of the certificate. He then testified that "the certificate was payable to the order of 'himself.'" Respondent then offered the memorandum in evidence. Such memorandum was in words and figures as follows:

"No. 2022. Certificate of Dep. dated July 17th, 1911, William Ducheneaux, $1000.00, payable to himself or order. [Indorsed] Jennie Ducheneaux. Paid to her."

Appellant objected upon the ground that it "is incompetent because it * * * is a * * * private memorandum, * * * hearsay, * * * not binding upon the defendant,

22—Vol. 38, S. D.

* * * for the further reason that it is not proper rebuttal evidence, for the reason that * * * plaintiff desires and is trying to impeach testimony of such witness (Burns) and to show by said exhibit that the word 'himself' was inserted as payee and not the name 'William Ducheneaux.' " Burns then gave further testimony, the substance of which is found in the following:

"Q. Could you testify as to the facts recited upon that memorandum or in relation to the facts that are recited on that memorandum independently of the memorandum by the memorandum refreshing your recollection and without having an independent recollection of it, or would you have to use the memorndum because you know it is a correct entry; A. I would have to rely on the memorandum. I have no independent recollection after using it. I know that the contents of that memorandum were correct when made. It was made at the time when I saw the certificate and when Mr. Rowlee, the cashier, handed to me the certificate No. 2022 sued on in this case." ·

The exhibit was again offered in evidence and the same objections entered thereto, which objections were · overruled and the exhibit received. Was the admission of such exhibit error? That this exhibit might tend to contradict Burns' testimony given on the direct case, and that its offer might appear to have been prompted by a desire to conform respondent's evidence to the custom testified to by the defense, were facts that might tend to create a suspicion in the minds of the jurors that such exhibit was fictitious; but such facts, while they might go to the probative value of the evidence, were no ground for its rejection by the court.

[4] The same might be said in relation to the objection that it was improper rebuttal. It undoubtedly would have been much better for the respondent, as it would naturally have carried more weight with the jury, if all the evidence in relation to the existence and contents of such memorandum had been introduced upon respondent's direct case; but to allow its introduction upon rebuttal was a matter that was clearly within the discretion of the trial court, even though it was not in its nature rebuttal evidence.

[5] Should it have been excluded simply because it was a private memorandum? It is undoubtedly the rule that many memoranda, that might be used for the purpose of refreshing a

witness' memory, are not themselves proper evidence. There is a distinction clearly pointed out by Wigmore, in his great work on evidence (sections 734-764), between evidence offered to prove "present recollections revived" and that offered to prove "past recollections recorded." When a memorandum refreshes the present memory of a witness so that he then recalls the fact toward which the inquiry is directed, we have a case of the first kind. When, after examining the memorandum, the memory of the witness is not so refreshed that he recalls the fact toward which the inquiry is directed but does testify to the fact that the memorandum was made at a time when his memory was fresh on the subject and that it is a true record of the facts so known at the time of its making, we have a case of the second kind. There are many authorities holding that, if a witness, after examining a memorandum, finds that his mind is refreshed so that he then has a recollection of the matters concerning which he is called upon to testify, the memorandum has performed its full purpose and is not itself proper evidence. In other words, these authorities hold that, in the case of "present recollections revived," the memorandum is never competent evidence. Jones on Evidence, § 883. National Ulster Co. Bank v. Madden, 114 N. Y. 280, 21 N. E. 408, 11 Am. St. Rep. 633. This is spoken of by Wigmore as the "New York doctrine." Wigmore on Evidence, § 738. Wigmore rejects this "docrtine" and states there are many cases where a memorandum is admissible in evidence even when it has fully revived the present recollection of the witness. But the authorities are agreed, though few recognize the distinction between "present recollections revived" and "past recollections recorded," that, where the testimony is such that it in fact shows the memorandum to be a record of past recollections but such memorandum cannot revive a present recollection in a witness, the memorandum is iteslf admissible in evidence. The subject-matter of a memorandum may have escaped a party's memory, or, if not, some detail thereof may have entirely escaped his memory, and, when called upon the witness stand and having his attention called to such memorandum, while he is able to say that he remembers making the memorandum and knows that it is a true memorandum of the subject-matter thereof, yet, though he has examined such memorandum, he still must admit that his

memory has not been so refreshed thereby that he has then an independent recollection of such matter or detail. In such a case, the oral testimony of the witness would amount to nothing if standing alone, because, after the examination of the memorandum, the witness concedes that his testimony is not a statement of what he then recalls in relation to the subject-matter—not his present recollection of such subject-matter—but that it is a statement of what he now knows in relation to the correctness of the memorandum. To complete such testimony and give it probative value, there must be received in evidence the memorandum, that which in fact is the only existing evidence of the subject under inquiry. An examination of the testimony in the present case clearly discloses that Burns, even without his memorandum, had an independent recollection of all the contents of the certificate other than as to whether it read payable to "William Ducheneaux" or payable to "himself." It was unnecessary for him to refresh his memory from the memorandum in relation to any other matter than as to which of the above terms was used to indicate the payee. It is clear that, under the "New York doctrine," the receipt in evidence of any such part of the memorandum as bore upon any question, other than as to what term was used to indicate the payee in the certificate, was incompetent; but, even if it were incompetent, it was wholly nonprejudicial because there is no dispute whatsoever in relation to the contents of the certificate that was issued at the time William Ducheneau deposited $1,000, except the dispute as to who was designated as payee. It was clear from the testimony of the witness Burns, if such testimony was believed by the jury—and we must presume it was—that, even after examining the memorandum, no present recollection was revived as to the exact wording of that part of such certificate as designated the payee thereof. But it is also clear from his testimony that he remembered that such memorandum was correct when made—that it was a correct record of his past recollection. It will be seen therefore that, by the testimony of Burns, the material part of this exhibit was brought even under the "New York doctrine."

[6-10] Appellant contends that the evidence was insufficient to support the verdict: First. Because there was no evidence of demand of payment; that a demand was necessary to establish a

cause of action.   The certificate sued on was not a demand certificate requiring a demand to mature it, but one which by its own terms, matured long prior to the bringing of the action. Second.   Because there was no evidence to show that the alleged certificate was ever properly indorsed by its owner or legal holder.   With the certificate in the wrongful possession of defendant, indorsed by one not the payee therein designated, and such certificate marked "paid," the bank is in no position to make this contention; and in the light of defendant's claim that no such certificate, as the one sued on, was ever issued by the bank, such contention is hardly deserving of notice.   Third.   Because there was no evidence that deceased ever deposited $1,000 with defendant on a certificate payable to himself.   There is clearly no merit in this.   The defendant admits the deposit, and there was proper evidence tending to show that the certificate ran to deceased as payee.   In connection with this feature of the case, we would note that, in the absence of the original exhibits from the appeal record, this court must presume that an examination of such exhibits would disclose the claimed suspicious appearance of the certificate register as well as the difference in the figures "2" as printed in the certificate No. "2022" produced in court by appellant from the figures "2" as appear in certificates Nos. "2020," "2021," and "2023" claimed by appellant to have come to it in the same block with No. "2022."   We can readily see how, under such circumstances, the jury might give very little credence to the testimony of appellant's officers.   Fourth.   Because there was no evidence to show that the alleged certificate was signed by an officer of the bank.   There is no merit to such contention.   The evidence showed that the certificate purported to be signed by J. W. Harris, the president of the bank.   Harris testified to issuing the certificate that was issued on this particular deposit, and appellant itself contends that but one certificate was issued.   The certificate testified to by Burns was marked "paid."   Under such evidence, the jury were justified in finding that the certificate sued upon was issued by Harris.   Fifth.   Because there was no evidence that plaintiff or his intestate was the owner of the alleged certificate.   There was evidence that the certificate was issued to William Ducheneaux.   It did not bear any indorsement by him. Respondent was his personal representative and as such suc-

ceeded to his interest. When appellant paid the certificate without a proper indorsement, if it did pay it, it ran its own risk as to such certificate being the property of Jennie Ducheneaux, and the burden was upon appellant to prove payment to the rightful owner, rather than upon respondent to disprove a transfer of such certificate by his intestate.

The judgment and order appealed from are affirmed.