## STATE v. CALLAHAN.

The testimony of a witness for the state, on a trial of one charged with crime, cannot be shown by the state calling the witness as a witness on a subsequent trial of the accused, either as independent testimony of the guilt of the accused or for the purpose of impeaching the witness.

(Opinion filed June 8, 1904.)

Error to circuit court, Deuel county; Hon. JULIAN BEN-NETT, Judge.

Osmer L. Callahan was convicted of crime, and brings error.  Reversed.

*Wilbur S. Glass, Albert R. Allen* and *DeForrest Ward,* for plaintiff in error.

*Philo Hall,* Atty. Gen., and *T. J. Law,* State's Atty., (*Geo. Marquis* of Counsel), for the State.

FULLER, J.   Under an information that is sufficient in every particular, plaintiff in error was tried and convicted of the crime defined by section 156 of the Revised Penal Code as follows:   "Every person who knowingly procures or offers any false or forged instrument to be filed, registered, or recorded in any public office within this state, which instrument, if genuine, might be filed or registered or recorded under any law of this state or of the United States, is guilty of felony."  Supported by affidavits tending to show that the accused could not have a fair and impartial trial in Deuel county, a motion for a change of venue was made, and the action of the trial court in overruling such motion is assigned as error.

By a large number of opposing affidavits presented by the state, it was made to appear quite clearly that whatever preju-

dice existed was confined to a small portion of the county, and the fact stands proved that an impartial jury, apparently satis factory to the accused, was quickly secured without the slight-est difficulty. The showing here made for a change in the place of trial being less favorable to the applicant than that disclosed by the record in the case of State v. Hall, 16 S. D. 61, 91 N. W. 325, where the overruling of a similar motion is sustained, it follows that the ruling now under consideration is clearly within the exercise of a warranted judicial discretion.

An alleged forged assignment of a real estate mortgage, standing of record in the name of C. M. Best, mortgagee, is the instrument which it is charged the accused offered for reg-istration, and to which is attached the purported official certifi-cate and seal of John C. Eakins, a notary public, whose testi-mony on behalf of the state at a former trial tended strongly to establish the crime charged in the information. Eakins hav- ing been subsequently retained to assist in the defense of the accused under a charge of rape, counsel for the prosecution appear to have taken it for granted that he would now be ad-verse to the state, and attempted to substitute his former ex-amination for present testimony, in the following manner: "The witness John C. Eakins being first duly sworn, upon ex-amination by Mr. Marquis, testified as follows: Q. Your name is John C. Eakins? A. Yes. Q. You may take into your hands this mortgage assignment and notarial certificate, the same being marked 'Exhibit F,' and state whether or not the same was placed in your hands at the trial of this cause at the April term of this court in 1902, and you were asked this ques-tion and you gave the following answer: 'I will ask you, Mr. Eakins, to examine this notarial certificate of acknowledgment,

Exhibit F, and state whether or not you have ever seen that notarial certificate before?' to which you answered: 'Do I understand you to mean this?' and the question 'yes' and your answer 'no'? A. I cannot answer so many questions at once. Q: I will ask you to examine this notarial certificate of acknowledgment upon Exhibit F, being the certificate of the acknowledgment of the assignment attached to Exhibit F, and state if you have seen that notarial certificate before. You said 'Do I understand you to mean this?' and I said 'yes,' and to that you answered 'no.' Now, Mr. Eakins, was that your testimony? A. That is mine. Q Whether or not, immediately after that question, you were asked the following question, to which you gave the following answer: 'Q. You never saw that before?' and your answer 'no.' A. It is my answer, I suppose. Q. What was your testimony? A. I could not say. Q. This is the transcript made by the stenographer of this court, and these questions were asked: 'Your name is John C. Eakins?' Answer. 'It is.' 'You reside at Gary, in this county?' A. 'Yes.' And on being asked the question referring to this exhibit: 'You never have seen this before?' and your answer 'no'—was that your testimony? A. Yes. Q. 'Q. I will ask you whether or not that is your signature referring to the signature of J. C. Eakins—I will ask you whether or not that, or any of that, is in your handwriting?' To which question you answered, 'no, sir; none at all'—was that your testimony? A. I suppose so. Q. 'Question. I will ask you whether or not at any time, while you were notary public, C. M. Best, who was just on the witness stand, appeared before you and acknowledged the execution of any instrument made by himself?' To which you answered, 'At what time?' And the next ques-

tion: 'In May, 1901?' to which you answered 'no.'—was that
your testimony? A. I cannot say as to that. Q. Is it not a
fact that that was your testimony at that term of court in April,
1902? A. You have it written there. Q. Is it not a fact that
that was your testimony? By the Court: The question is '
whether or not you so testified. A. I do not know what I did.
Q. I will ask you whether or not at that time, on cross-exam-
ination by Mr. Wilbur S. Glass, you were not asked this ques-
tion: 'Is that your signature?'—referring to the acknowledg-
ment John C. Eakins—to which question you answered 'no.'
Mr. Eakins, did you so testify? A. I suppose the record is
correct. Q. I will ask you whether or not Mr. Glass did not
ask you that question, 'Whose is it?' to which you answered,
'Somebody wrote it'—was that your testimony? A. I believe
so. Q. I will ask you whether or not Mr. Glass did not ask
you that question, to which you answered, 'I do not know, it is
not mine'—was that your testimony? A. Yes. Q. I will ask
you if Mr. Glass did not ask you this question: 'You swear
positively that that is not your handwriting?' To which ques-
tion you gave the answer 'It is not mine.' A. The same answer.
Q. You did so testify? A. I do not know; I suppose the record
is correct. Q. And after the trial, is it not a fact that in Hof-
felt's saloon, in presence of C. J. Ronald, Dr. Harvey, W. I.
Noble, and others, you stated that you did not believe that it
was your signature? A. I never made any such statement.
Q. You deny that you ever made such a statement? A. I deny
it positively." The foregoing testimony was admitted over
timely and proper objections, and the right of the accused to
have such anomalous proceeding reviewed by this court was
fully preserved by his counsel. After a witness has given

damaging testimony, to the unavoidable surprise of the party calling him, it seems to be, in a proper case, within the discretion of the trial court to permit interrogation of such witness with respect to previous inconsistent statements, but this is to refresh his memory, and rarely, if ever, for the purpose of impeachment. Considered as independent testimony, what the witness had stated at a former trial was clearly incompetent, and if counsel believed that he had subsequently become infamously adverse to the prosecution, and would testify falsely, his production was in direct violation of the ethical doctrine that one who voluntarily calls a witness vouches for his veracity. Upon no principle can what a person has sworn to before a grand jury, or at a previous trial, be taken as evidence to prove a defendant guilty of the crime with which he is charged; and a prosecutor in a criminal case is not permitted to refer to such testimony in order to discredit his own witness. People v. Safford, 5 Denio 112; Putnam v. United States, 162 U. S. 687, 16 Sup. Ct. 923, 40 L. Ed. 1118. In the absence of fraud, imposition, or surprise, a party introducing a witness upon the trial of a civil action cannot impeach his testimony by resort to such a method. Dunn v. Dunnaker, 87 Mo. 597; Velott v. Lewis, 102 Pa. 326. If the practice here employed is allowable, evidence formally given by a witness may be presented to the jury by a party calling him at a later trial, either as independent testimony or for the purpose of impeachment, and such an innovation upon one of the fundamental rules of evidence is not entitled to judicial sanction.

The judgment of the court below is reversed, and the case remanded for a new trial.