STATE, Respondent, v. RAETZ, Appellant.

(220 N. W. 492.)

(File No. 6463. Opinion filed July 14, 1928.)

*H. F. Fellows,* of Rapid City, for Appellant.

*Buell F. Jones,* Attorney General, and *Bernard A. Brown,* Assistant Attorney General, for the State.

MORIARTY, C. The appellant Roy Raetz was convicted of the crime of manufacturing intoxicating liquor, contrary to law.

He was brought to trial at the regular October, 1925, term of court in Meade county, and the jury failed to agree. He was again brought to trial, under the same information, at the May, 1926, term of the same court, and this trial resulted in a verdict of guilty and judgment in accordance therewith.

The defendant's motion for a new trial was denied, and he appeals from the judgment and the order denying a new trial.

The appeal in this case presents but two questions for consideration by this court, to wit: Did the trial court err in denying the defendant's application for a continuance? Did the trial court err in its rulings in the matter of the examination of the witness Clarence Smith?

As to the application for a continuance, the record shows that the defendant's affidavit was the only showing presented to the trial court. This affidavit was sworn to before defendant's counsel on May 1, 1926. It states that Gladys Raetz, defendant's wife, was a material and necessary witness for defendant, and that she

was unable to be present at the regular May, 1926, term of the court, "for the reason that for more than one week last past" she has been ill and under a doctor's care with influenza, and is not able because of said sickness to travel to Sturgis, where the court is held.

The affidavit then proceeds to state that said Gladys Raetz testified as a witness for the defendant at the former trial of the case, and to state the substance of the testimony which she gave at that time, and that the defendant believes that said witness can be produced at the next term of court, if a continuance is granted, and will testify as set forth in the affidavit and as she testified at the former trial.

When the trial judge indicated his intention to deny the application, defendant's counsel contended that, as a condition of the denial, the trial court should have required the state to admit that the absent witness would testify as set forth in the affidavit, and that such testimony was true. The state admitted that the witness would so testify, but refused to admit that such testimony was true. On the trial of the case, defendant's counsel read to the jury the statements of the affidavit as to the testimony which the absent witness would give.

Defendant's counsel contends that the trial court erred in denying the application for a continuance, and particularly in not requiring the state to admit the truth of the testimony which the affidavit stated that the absent witness would give.

The affidavit, as previously stated, was sworn to on May 1st; it stated that the witness had been under a doctor's care for over a week. The court did not make its order denying the application until May 7th, and the case was not called for trial until May 12th. There is nothing before this court, nor was there anything before the trial court, to show that the witness could not be present at the time when she would need to be called. Without such showing, there is no prejudice shown. Under those circumstances, we cannot say that the trial court abused its discretion in denying a continuance.

As to the examination of the witness Clarence Smith, the facts are as follows:

Smith had testified as a witness for the state at the first trial. He was called by the state at the second trial. He testified that

he was making whisky in a certain draw on the 27th day of June, 1925; that he had served a term in jail for that offense; and that he had testified at the former trial of Roy Raetz. But, upon being asked as to the connection of Roy Raetz with the use of the still, he answered that Raetz was not with him in the draw on June 27, 1925; that Raetz did not help him manufacture moonshine whisky in that draw; that, to his knowledge, Raetz had nothing to do with that still.

Thereupon the state's attorney read from what purported to be a transcript of Smith's testimony at the former trial. The state's attorney read a number of questions and answers, and asked the witness:

"Were not these questions asked of you, and did you not return those answers?

The witness answered:

"May I see the testimony? I remember some of those things, but it is so long I do not remember answering some of them questions; I don't remember them all."

The substance of the testimony embodied in the questions and answers read to the witness was that he stated that on June 27, 1925, he was engaged in manufacturing moonshine whisky in the draw mentioned in the evidence, and that Roy Raetz was there with him while he was so engaged.

To the reading of these questions and answers and to the question whether the witness had been asked those questions and had given those answers, the defendant's counsel interposed the following objection:

"Objected to as improper direct testimony, incompetent, and for the further reason that it is misconduct of counsel, prejudicial to defendant, improper attempt by the state to impeach its own witness."

It is undoubtedly the general rule that a party is not allowed to cross-examine and impeach his own witness, but that rule has a well-recognized exception. This court, in the case of State v. Laymon, 40 S. D. 381, 167 N. W. 402, refers to this exception in the following language:

"It is contended by appellant that the trial court permitted the state to cross-examine and in part to impeach its own witnesses. That in so doing the well-established rule that a party cannot cross-

examine or impeach his own witnesses was violated, and that appellant's rights were prejudiced thereby. There is no doubt that the rule is correctly stated by appellant, but it is not an invariable rule to be adhered to in all cases and under all circumstances. Where a witness is unwilling to testify or is hostile to the party calling him to the stand, and it is apparent that he is not telling the truth or is concealing the truth, or where his testimony is contrary to statements, purporting to be facts made by him before he went upon the stand, or is contrary to what he has led the party placing him upon the stand to believe it would be, then, in order to ascertain the truth, it is within the province of the trial court to permit the party placing such witness upon the stand to cross-examine such witness, or even to impeach him. But what constitutes a proper case for proceeding in this manner is to be determined by the trial court in the exercise of sound judicial discretion, and, unless it appears that such discretion has been abused by the trial court, the course pursued by it will not be disturbed by this court."

██ This language in the Laymon Case applies to the instant case as aptly as to the case in which it was originally used. The witness Smith having testified at the former trial, the state's attorney had a perfect right to expect that the witness would testify substantially as he had testified at such former time. When the witness testified that Raetz was not with him while whisky was being manufactured in the draw, on June 27, 1925, and that Raetz, so far as the witness knew, had nothing to do with the still, such testimony was clearly a matter of surprise to the state, and the trial judge, having presided at the former trial, was in a position to recognize that the witness had become hostile to the state, and to treat the examination accordingly.

Appellant's counsel cites in support of his contention on this point the decision of this court in State v. Callahan, 18 S. D. 145, 99 N. W. 1099, and contends that the instant case is directly covered by the rule laid down in that case. It is true that there is considerable similarity between the Callahan Case and the instant case. It is also true that the opinion in the Laymon Case makes no reference to the Callahan Case, and therefore there is no intent to overrule the Callahan Case expressed in the later decision. But there appears to be a clear distinction between the Callahan Case

on the one hand and the Laymon Case and the case now before the court on the other.

In the Laymon Case and in the instant case there are facts sufficient to convince the trial court that the counsel for the state was surprised by the attitude of the witnesses, while there was no such showing in the Callahan Case.

This distinction is sufficient to reconcile the Callahan and Laymon opinions in so far as the result of the decisions are concerned, but the language in the Callahan opinion goes farther than was necessary to the decision in that case, and contains many statements in conflict with the language of the opinion in the Laymon Case. In so far as the two decisions are in conflict, this court now adopts as a correct statement of the law the language above quoted from the opinion in the Laymon Case.

A witness, if allowed to go unchallenged, may, by change of front, prejudice the case of the party who, in good faith, has called him, expecting, and having reason to expect, that the witness told the truth on his former examination, and will continue to tell the truth when again examined. And, when this element of surprise is present, a party may be allowed to cross-examine his own witness.

No case could more fully present the question of this element of surprise than the case now before us. Under the circumstances, we cannot say the trial court abused its discretion in overruling defendant's objections to the manner in which the witness Smith was examined.

Finding no reversible error in the record, the judgment and order appealed from are affirmed.

BURCH, P. J., and POLLEY, SHERWOOD, CAMPBELL, and BROWN, JJ., concur.