[Crim. No. 6034.   Second Dist., Div. Three.   Jan. 22, 1958.]

THE PEOPLE, Respondent, v. WILLIAM JOSEPH MORRIS, Appellant.

Thomas H. Greenwald, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

VALLÉE, J.—In a nonjury trial defendant was convicted of a violation of section 11500 of the Health and Safety Code. On stipulation the cause was submitted on the transcript of the preliminary examination. Defendant appeals from the judgment.

On February 23, 1957, Officer Lowe of the Los Angeles Police Department contacted what he called "a reliable confidential informant." Lowe testified he had used this informer in the past and that the information the informer had given had been reliable. Lowe also testified he had done business with the informer for a year; Officer Olson had been doing business with him (the informer) for three years; the informer had given him (Lowe) information which he found reliable three times; "Q. Any bad information received from him any time where he has been shown to be wrong? A. There has been times that we haven't found narcotics in the last three years; that we have missed." The informer told Lowe that defendant and a Larry Prentis were in a room on the second floor of a hotel at 333 East Fourth Street in Los Angeles and that they had in their possession a fairly large quantity of narcotics.

About an hour after receiving the information from the informer, Lowe and another officer went to room 21 in the hotel at 333 East Fourth Street. While standing outside the door they heard bed springs squeaking. Without knocking or giving any warning of any kind, the officers broke the lock and entered the room. Defendant was sitting on the bed. The officers arrested him. They found a "finger stall" with 10 bindles of heroin in it lying on the bed. Lowe testified: he asked defendant if there was any more stuff in the room; defendant said "there wasn't. Larry had gone out with the rest of the stuff and all the money. . . . That is all the stuff I have got in the room"; he asked defendant if he used narcotics; defendant said he did, that he used about a paper and a half a day. Defendant did not testify or present any evidence other than by cross-examining Lowe.

Defendant's contention is that the arrest and the search and seizure were illegal in that the arresting officer did not have probable cause or a warrant for the arrest, and did not have a warrant for the search and that the evidence secured thereby was inadmissible. There is nothing in the record to show that the arresting officers did not have a warrant for the arrest of defendant or that they did not have a warrant to search his room. The question raised here was not raised either at the preliminary or at the trial. In *People* v. *Farrara*, 46 Cal.2d 265 [294 P.2d 21], there was no evidence that the arrest was made without a warrant or that private premises were entered or the search made without a search warrant. The court held (p. 268) :

"[T]o reverse the judgment it would be necessary to presume that the officers acted illegally and that the trial court erred in admitting the evidence so obtained. It is settled, however, that error will not be presumed on appeal [citations], and in the absence of evidence to the contrary it must also be presumed that the officers regularly and lawfully performed their duties." (Also see *People* v. *Citrino*, 46 Cal.2d 284, 287 [294 P.2d 32].)

Since in the present case the record is silent as to whether the officers had a warrant for the arrest of defendant and is silent as to whether they had a search warrant, we must presume they regularly and lawfully performed their duties, that they had a warrant for the arrest of defendant, and therefore that they had reasonable cause for his arrest; and we must presume they had a search warrant and therefore that the search and seizure were lawful.

Defendant argues it was incumbent on the People to show literal compliance with section 844 of the Penal Code which provides, "To make an arrest . . . a peace-officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired." The contention is answered by *People* v. *Maddox*, 46 Cal.2d 301 [294 P.2d 6], where it is said (p. 304) :

"The question is thus presented whether or not evidence obtained by a search incident to an arrest must be excluded when the officer has reasonable cause to make the arrest and search but fails to comply with the requirements of section 844. . . .

"[P. 305.] The demand and explanation requirements of

section 844 present a more difficult problem. The officer's compliance with them will delay his entry, and cases might arise in which the delay would permit destruction or secretion of evidence so that what the search turns up would depend on the officer's compliance with the section. In other cases, however, the evidence may not be readily disposed of, and in still others it may be impossible to determine whether or not the evidence would still have been available had there been the delay incident to complying with the section.

"It must be borne in mind that the primary purpose of the constitutional guarantees is to prevent unreasonable invasions of the security of the people in their persons, houses, papers, and effects, and when an officer has reasonable cause to enter a dwelling to make an arrest and as an incident to that arrest is authorized to make a reasonable search, his entry and his search are not unreasonable. █ Suspects have no constitutional right to destroy or dispose of evidence, and no basic constitutional guarantees are violated because an officer succeeds in getting to a place where he is entitled to be more quickly than he would, had he complied with section 844. Moreover, since the demand and explanation requirements of section 844 are a codification of the common law, they may reasonably be interpreted as limited by the common law rules that compliance is not required if the officer's peril would have been increased or the arrest frustrated had he demanded entrance and stated his purpose. (*Read* v. *Case*, 4 Conn. 166, 170 [10 Am.Dec. 110] ; see Rest., Torts, § 206, com. d.) Without the benefit of hindsight and ordinarily on the spur of the moment, the officer must decide these questions in the first instance. When as in this case, he has reasonable grounds to believe a felony is being committed and hears retreating footsteps, the conclusion that his peril would be increased or that the felon would escape if he demanded entrance and explained his purpose, is not unreasonable. . . . Moreover, since the officer's right to invade defendant's privacy clearly appears, there is no compelling need for strict compliance with the requirements of section 844 to protect basic constitutional guarantees. (*Cf. People* v. *Boyles, supra,* 45 Cal.2d 652, 656 [290 P.2d 535] ; *People* v. *Cahan, supra,* 44 Cal.2d 434. 442 [282 P.2d 905], footnote.)

█ We conclude therefore that when there is reasonable cause to make an arrest and search and the facts known to him before his entry are not inconsistent with a good faith belief on the part of the officer that compliance with section

844 is excused, his failure to comply with the formal requirements of that section does not justify the exclusion of the evidence he obtains.''

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied February 19, 1958.