STATE, Respondent v. KIETZKE, Appellant

(186 N.W.2d 551)

(File No. 10787. Opinion filed April 30, 1971)

Rehearing denied, May 13, 1971.

**Gordon Mydland,** Atty. Gen., **Leonard E. Andera,** Asst. Atty. Gen., Pierre, for plaintiff and respondent.

**David E. Morrill,** Sturgis; for defendant and appellant.

FOSHEIM, Circuit Judge.

Kenneth Kietzke was convicted under separate counts of unlawful possession of a narcotic drug and unlawfully administering a narcotic drug in violation of Section 2, Chapter 94, 1968 South Dakota Session Laws. South Dakota upon enactment of that statute joined the list of states adopting the Uniform Narcotic Drug Act which makes it unlawful for any

person to possess or administer any narcotic drug or any preparation containing a narcotic drug except as authorized therein. The term "narcotic drug" is defined to include "marihuana" and all extracts and derivatives of the plant Cannabis sativa L. with some exceptions.

The defendant first urges on appeal that the evidence is insufficient to support the verdicts. A summary of the state's version of the evidence reveals that on the evening of March 14, 1969, Kenneth Kietzke traveled from Hot Springs to Lead, South Dakota, with one Danny Burleson. Enroute he told Burleson he either had or was going to get some "hash" and intended to get "stoned". Upon arriving at Lead they went to an apartment which was dark with black lights. There was a mattress on the floor. Burleson identified the cigarette loader found at the apartment as similar to one he had previously seen at the defendant's home and which the defendant either told him or he assumed was used to load marihuana cigarettes. The manager of the apartment house saw strangers leaving and entering the apartment throughout the night. He saw a girl leave the apartment who appeared to be in a trance. He also smelled a peculiar odor. About 5 a. m., March 15, the law officers armed with a search warrant went to the apartment. The defendant and others came out of the apartment into the hall as the officers approached. Upon seeing the police they immediately turned and proceeded back into the apartment. The officers saw something in the defendant's hand and gave chase. They blocked the defendant's efforts to close the door and followed into the apartment. The defendant broke a window and threw something out. Hashish, a marihuana derivative, was found on the ground below the broken window. The search produced several other items of evidence, including more hashish, a cigarette loader and a long-stemmed pipe which contained residue of marihuana.

Kirk Leichtnam observed the defendant at the apartment during the night. He saw him take tobacco out of cigarettes and reload them with what looked like tobacco, but which he thought was marihuana. Kietzke passed two or three of these cigarettes around to others in the circle. The cigarettes were smoked. Leichtnam also saw some small

black cubes resembling charcoal smoked in the pipe. They would put aluminum foil in the pipe, poke holes in the foil, and then insert the cubes. He did not specifically see the defendant smoke the pipe, but recalled the defendant was present when it was smoked. There was group conversation that the substance smoked in the pipe was hashish.

The state's witness, Vic Leveque, testified that he saw a pipe at the party which resembled the one in evidence. A purple substance which looked like cigarette tobacco was put into it. The pipe was then passed around and smoked. He saw the defendant smoke it. There was group conversation that "dope" or "stuff" was present. Leveque smoked the pipe for several minutes. It had previously been loaded and burned. It was covered with ashes; however, it didn't resemble burnt tobacco. Leveque said he had never before seen anything like it. It was loose, but was not ground fine like tobacco. It was bigger. After smoking the pipe Leveque felt "strange" and "goofy". It made his throat feel "raw" and "biting". He felt "light" and "hallucinated". This was not the ordinary effect he received from smoking a pipe. There was a plastic sack on the floor containing hashish. He twice saw the defendant inject some of the substance from the sack into a cigarette from which the contents had previously been removed. The defendant smoked some of the cigarettes and laid others on the floor. He gave one to Leveque who smoked it. Leveque felt no effects from the cigarette. However, he was then still under the effects from the pipe. The substance from the sack was also smoked in the pipe. On one occasion the defendant threw a small piece of hashish to Leveque.

It is generally held under the Uniform Act that the accused must be shown to have been aware of the presence and character of the drug and to have been intentionally and consciously in possession of it. However, the possession need not be exclusive. It may have been shared with others. 25 Am.Jur.2d, Drugs, Narcotics, and Poisons, § 21. See also Annotations 91 A.L.R.2d 818.

■ With regard to the administering charge, the trial court instructed the jury that "A person administers a nar-

cotic drug when he causes or procures a person to take some or other substance into his or her person." No objection was made or exception taken to this instruction, and therefore we cannot consider its accuracy. State v. Poppenga, 76 S.D. 592, 83 N.W.2d 518. However, this should not be read to imply our approval of such definition. State v. Waugh, 80 S.D. 503, 127 N.W.2d 429. The evidentiary chain consisting of both circumstantial and direct evidence so links the defendant with an illegal possession and use of a narcotic drug that there is more than a mere suspicion or possibility of guilt. State v. Wolfe, 61 S.D. 195, 247 N.W. 407. The inference of his guilt may be fairly drawn as to both counts. Rodella v. United States, 9 Cir., 286 F.2d 306. By no reasonable theory could the jury believe the state's evidence and the accused innocent. State v. Nelson, 83 S.D. 655, 165 N.W.2d 55 (reported as State v. Flake in North Western Reporter).

■ Defendant next urges the court erred in permitting the state's attorney to cross-examine and impeach his witnesses. The state's witness, Kirk Leichtnam, was subpoenaed from the Stockade at Fort Riley and granted immunity. Nevertheless, he once refused to answer and generally gave evasive answers on direct examination. The court found he was a hostile witness. The record reveals Vic Leveque had been intimidated by several persons, including the defendant. There is testimony the defendant was heard to say before the trial: "It looks like the informer is Leveque and let's get to him." Leveque also gave evasive answers on direct examination. The state's attorney was permitted to ask these witnesses leading questions and to confront them with their testimony from the preliminary hearing. It is, of course, the established rule that a party cannot cross-examine or impeach his own witnesses. This, however, is not an invariable rule to be adhered to in all cases and under all circumstances. The exception was expressed in State v. Laymon, 40 S.D. 381, 167 N.W. 402:

> "Where a witness is unwilling to testify or is hostile to the party calling him to the stand, and it is apparent that he is not telling the truth or is concealing the truth, or where his testimony is contrary to statements, purporting to be facts, made by him be-

fore he went upon the stand, or is contrary to what he has led the party placing him upon the stand to believe it would be, then, in order to ascertain the truth, it is within the province of the trial court to permit the party placing such witness upon the stand to cross-examine such witness, or even to impeach him. But what constitutes a proper case for proceeding in this manner is to be determined by the trial court in the exercise of sound judicial discretion, and, unless it appears that such discretion had been abused by the trial court, the course pursued by it will not be disturbed by this court * * *".

This rule was approved in Nelson v. Chicago, B. & O. Ry. Co., 47 S.D. 228, 197 N.W. 288, and in State v. Raetz, 53 S.D. 291, 220 N.W. 492. The Raetz opinion reviewed and modified the more restrictive earlier ruling in State v. Callahan, 18 S.D. 145, 99 N.W. 1099. In State v. Lapke, 62 S.D. 187, 252 N.W. 38, we reaffirmed the rule in Laymon with the admonition that when evidence is received of the testimony given at the preliminary hearing the trial court must instruct that such previous testimony does not constitute substantive proof of the matters therein related. Such an instruction was given in this case. As stated in Raetz:

"the state's attorney had a perfect right to expect that the witness would testify substantially as he had testified at such former time. When the witness testified (differently) such testimony was clearly a matter of surprise to the state, and the trial judge * * * (could) recognize that the witness had become hostile to the state, and to treat the examination accordingly."*

---

*The rule as settled in South Dakota seems to be the orthodox view adopted in most jurisdictions. The minority view supported by most legal commentators permits the substantive use of prior inconsistent statements on the theory that the usual dangers of hearsay are largely nonexistent when the witness testifies at trial. See California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489, and authorities cited in footnotes 4, 5, 6 and 7 on pages 494 and 495 thereof.

The trial court did not abuse its discretion in this regard.

We next turn to defendant's claim the evidence obtained by the search should have been suppressed because the affidavit did not show probable cause.

■ The protection afforded by the Constitutions of the United States and this State against unreasonable searches and seizures, U. S. Constitution Amendments, Amend. 4, Constitution of S. D. Art. VI, § 11, has been thoroughly discussed by this court. State v. Cochrane, 84 S.D. 527, 173 N.W.2d 495; State v. Hermandson, 84 S.D. 208, 169 N.W.2d 255; State v. McCreary, 82 S.D. 111, 142 N.W.2d 240; State v. Merrill, 82 S.D. 609, 152 N.W.2d 349. If the evidence was obtained by a search in violation of either constitution it was inadmissible. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081; State v. McCreary, supra.

The affidavit of the deputy sheriff in support of the search warrant recites:

> "Affidavit in support of a Search Warrant for premises Grier Apartment No. 724 at 415 West Main Street, in the City of Lead, Lawrence County, South Dakota occupied Hartley Charles Alsgaard and David George Appel and the persons of Hartley Charles Alsgaard and David George Appel.

> "In the morning of Saturday, March 15th, 1969, I Robert Kelley received information that Hartley Charles Alsgaard and David George Appel are involved in the illicit narcotic use and that they have the paraphernalia for its use and that they keep a ready supply of narcotics and all derivatives therefrom in the above mentioned apartment.

> "The source of information has been to the apartment many times and on many occasions and observed these narcotics in use with the above mentioned persons. The last time being this morning March 15, 1969.

> "Because the source of information mentioned in the opening paragraph has given information to

the undersigned on previous occasions and which was correct, and because the same information is given by other sources does believe there are illicit narcotic drugs secreted in the above mentioned apartment by Hartley Charles Alsgaard and David George Appel, and on their person.

"That the source of information has been offered narcotics for purchase from the people occupying this apartment."

 The affidavit in support of a search warrant may be based on hearsay and need not reflect the direct personal observation of the affiant. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, 78 A.L.R.2d 233, and the identity of the informant need not be disclosed. Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887. However, the conclusion of the officer as to probable cause is not enough. Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503. The magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant was reliable. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723. In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation. Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637.

 In State v. McCreary, supra, we quoted thus from Mr. Justice Goldberg's majority opinion in United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684:

" 'If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic

fashion. * * * This is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the "underlying circumstances" upon which that belief is based. See Aguilar v. State of Texas, supra. Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hyper-technical, rather than a commonsense, manner. **Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.** Jones v. United States, supra, 362 U.S. [257], at 270, 80 S.Ct. [725], at 735 [4 L.Ed.2d 697].' " (Emphasis supplied.)

In State v. Cochrane, 84 S.D. 527, 173 N.W.2d 495, we said:

"Generally statutes authorizing and regulating searches and seizures and the issuance of search warrants are strictly construed against the state and liberally in favor of the individual. State v. Lane, 76 S.D. 544, 82 N.W.2d 286 * * *".

In Cochrane the court was considering the validity of an unsigned search warrant. However, to the extent that the language in Cochrane and also in State v. Lane, supra, seems to indicate a construction more strict than that expressed in United States v. Ventresca, supra, as to probable cause, it is so modified.

 We think the showing of probable cause reaches the minimum requirements approved in Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327.

 The next question is whether the evidence obtained by the search should have been suppressed because in executing the warrant the officers did not first give notice of their authority and purpose and request admittance.

SDCL 23-15-14 reads:

> "The officer executing a search warrant may break open any building, structure, or container or anything therein to execute the warrant if, after notice of his authority and purpose, he be refused admittance."

This is similar to the Federal Statute, 18 U.S.C.A. § 3109. In support of this assignment counsel cite Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332. The court there held that the officers had no probable cause to make an arrest without a warrant, and hence had no authority to break down a door. However, the court recognized that such questions are largely to be determined by reference to state law and that some states hold justification for noncompliance with the "announce first" rule exists in exigent circumstances, as, for example, when the officers in good faith believe they, or someone within, are in peril of bodily harm, or that the person to be arrested is fleeing or attempting to destroy evidence. The Miller opinion cites People v. Maddox, 46 Cal.2d 301, 294 P.2d 6. A separate opinion in the later case of Ker v. California, 374 U.S. 23, 83 S. Ct. 1623, 10 L.Ed. 2d 726, went further and quoted Justice Traynor in People v. Maddox, supra, as follows:

> " 'It must be borne in mind that the primary purpose of the constitutional guarantees is to prevent unreasonable invasions of the security of the people in their persons, houses, papers, and effects, and when an officer has reasonable cause to enter a dwelling to make an arrest and as an incident to that arrest is authorized to make a reasonable search, his entry and his search are not unreasonable. Suspects

have no constitutional right to destroy or dispose of evidence, and no basic constitutional guarantees are violated because an officer succeeds in getting to a place where he is entitled to be more quickly than he would, had he complied with section 844. Moreover, since the demand and explanation requirements [374 U.S. 40, 83 S.Ct. 1633] of section 844 are a codification of the common law, they may reasonably be interpreted as limited by the common law rules that compliance is not required if the officer's peril would have been increased or the arrest frustrated had he demanded entrance and stated his purpose. Read v. Case, 4 Conn. 166, 170 [10 Am.Dec. 110]; see Restatement, Torts, § 206, comment d. Without the benefit of hindsight and ordinarily on the spur of the moment, the officer must decide these questions in the first instance.' "

The Ker decision further notes:

"No such exigent circumstances as would authorize noncompliance with the California statute were argued in Miller, and the Court expressly refrained from discussing the question, citing the Maddox Case without disapproval."

Section 844 of the California Penal Code is similar to our SD-CL 23-15-14. It authorizes the officer to force entry "after having demanded admittance and explained the purpose for which admittance is desired."

In People v. Maddox, supra, the court summarized:

"We conclude therefore that when there is reasonable cause to make an arrest and search and the facts known to him before his entry are not inconsistent with a good faith belief on the part of the officer that compliance with section 844 is excused, his failure to comply with the formal requirements of that section does not justify the exclusion of the evidence he obtains."

The Maddox opinion was later approved in People v. Morris, 157 Cal.App.2d 81, 320 P.2d 67; People v. Miller, 162 Cal. App.

2d 96, 328 P.2d 506; People v. White, 167 Cal.App.2d 794, 334 P.2d 963; People v. Hammond, 54 Cal.2d 846, 9 Cal.Rptr. 233, 357 P.2d 289.

The defendant's flight into the apartment indicated actual knowledge of the officers' authority and purpose. His attempt to shut the door on the pursuing officers was the equivalent of refusing admittance. The officers observed something in defendant's hand. They reasonably concluded he was fleeing and seeking time to dispose of contraband. It would have a perversive impact on the law to insist under such circumstances that the officers must remain outside until they had properly announced the obvious, and thus fail to see the defendant break the window and throw something out of it. That in turn would make it difficult to connect the defendant with the illegal narcotic which was found on the ground below the window. The search warrant was served at the first reasonable opportunity.

Again from People v. Maddox, supra:

"Moreover, since the officer's right to invade defendant's privacy clearly appears, there is no compelling need for strict compliance with the requirements of section 844 to protect basic constitutional guarantees. Cf., People v. Boyles, supra, 45 Cal.2d 652, 290 P.2d 535; People v. Cahan, supra, 44 Cal. 2d 434, 442, footnote, 282 P.2d 905."

The cross-examination of Deputy Sheriff Kelley revealed that during the search he gathered a quantity of cigarette butts. He examined them by smell and appearance. He claimed some knowledge of hashish and marihuana that is smoked in cigarettes. He was convinced the cigarette butts contained nothing but tobacco, and therefore destroyed them. They were not inventoried or chemically analyzed. Defendant claims the destruction of this evidence denied him a fair trial. Since there was evidence connecting cigarettes with narcotics, the cigarette butts should have been preserved. The state's attorney conceded this in argument. However, had the cigarette butts been chemically analyzed, the most favorable result possible for the defendant would be a finding that they contained nothing but tobacco. The testi-

mony admits this. It is the rule that spoliation of evidence creates an inference or presumption that it would not have supported the charges against the defendant. 22A C.J.S. Criminal Law, § 596, at page 377; State v. Oster, 232 Or. 396, 376 P.2d 87; People v. Foreman, 112 Cal.App.2d 616, 246 P.2d 979; Bruck v. State, 244 Ind. 466, 193 N.E.2d 491; United States v. Remington, 2 Cir., 191 F.2d 246, cert. denied, 343 U.S. 907, 72 S.Ct. 580, 96 L.Ed. 1325; Wigmore on Evidence, 3rd Edition, § 291. The testimony of the state concedes the butts would not have supported the charges against defendant and were therefore discarded.

The jury was instructed to decide the case exclusively on the evidence produced in court.

From this record we are unable to agree that defendant was prejudiced by the destruction of the cigarette butts.

We have reviewed the remaining assignments of error and find they are without merit. The judgment is affirmed.

HANSON, BIEGELMEIER, WINANS and WOLLMAN, JJ., concur.

FOSHEIM, Circuit Judge, sitting for RENTTO, P.J., disqualified.