STATE, Respondent v. WATKINS, Appellant

(228 N.W.2d 635)

(File No. 11462. Opinion filed May 2, 1975)

Robert J. Burns, Sioux Falls, for defendant and appellant.

Kermit A. Sande, Atty. Gen., Earl Mettler, Asst. Atty. Gen., Pierre, Gene Paul Kean, Minnehaha County, State's Atty., Sioux Falls, for plaintiff and respondent.

WOLLMAN, Justice.

Defendant was charged conjointly with one Jerry Rehfeld with three counts of burglary in the third degree and one count of grand larceny following the theft of coins from three taverns and the tires and wheels from an automobile. Prior to trial, Rehfeld pleaded guilty on the grand larceny charge and was sentenced to a term in the state penitentiary. The other three charges against him were dismissed. Defendant was found guilty by a jury on all four charges and was sentenced to serve concurrent terms in the state penitentiary.

Defendant contends that, (1) the court erred in admitting into evidence a tire iron taken from defendant's automobile by police because the affidavit upon which the search warrant was based was insufficient to support the issuance of the warrant and because the tire iron was not linked to the alleged burglary, (2) the trial court erred in admitting into evidence a certain statement given by Rehfeld to the police shortly after the offenses in question, and (3) there was insufficient evidence to support the verdict because of the absence of any substantial direct testimony, other than the statement of defendant's accomplice, Rehfeld, linking defendant with the crime charged. Because we agree with defendant's contention that the court should not have permitted the state to introduce Rehfeld's prior statement, we must reverse the conviction.

Because the case must be retried, we have examined the record in the light of defendant's contentions (1) and (3) above, and conclude that they are without merit. The police officer who filed the affidavit in support of the search warrant set forth information that had been given to him by fellow officers, by victims of the crimes, and by named third party witnesses. Thus the affidavit was sufficient under the rules announced in State v. Haron, 88 S.D. 397, 220 N.W.2d 829. Because the jury could reasonably infer from the evidence that the tire iron was the instrument used in making entry to the taverns, it was properly admitted. State v. O'Connor, 84 S.D. 415, 172 N.W.2d 724; People v. Bedwell, 181 Colo. 20, 506 P.2d 365; cf. Moore v. Illinois, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706. Likewise, there was sufficient evidence apart from Rehfeld's testimony to satisfy the rule that a conviction cannot be had upon the uncorroborated testimony of an accomplice. SDCL 23-44-10.

We turn to the question regarding the state's use of the statement made by Rehfeld shortly after the date of the alleged crimes. Prior to trial, defendant moved to suppress Rehfeld's statement on the ground that it had been obtained in violation of Rehfeld's constitutional rights. Although apparently no formal order was entered to that effect, the trial court ruled that the state would be permitted to use the statement only for impeachment purposes.

As part of its case in chief, the state called Rehfeld as a witness. After establishing that Rehfeld was an inmate at the state penitentiary and that he had been with defendant during the early morning hours on the date of the alleged offenses, the deputy state's attorney asked Rehfeld a material question concerning one of the burglaries, whereupon Rehfeld refused to answer on the grounds that he might be incriminated. The court then conducted further proceedings out of the hearing of the jury. The deputy state's attorney stated that he would proceed under the provisions of SDCL 23-40-12, which grants immunity from prosecution to a witness who is compelled to testify over his objection that the testimony given might tend to incriminate him. The trial court advised Rehfeld that the state had granted him immunity on the three burglary charges and ordered Rehfeld to testify upon penalty of being held in contempt of court if he refused to do so. Rehfeld indicated that he understood the grant of immunity and the terms of the court's order and then stated that he would not testify because if he did, "I wouldn't last too long up there," indicating that he had received threats from some of his fellow inmates at the penitentiary.

Upon returning to the witness stand and being asked whether anyone was with him at the time he committed the offense which gave rise to the charge of grand larceny against him, Rehfeld again refused to answer on the ground that he might be incriminated. After being reminded by the court that he had been granted immunity and being ordered by the court to testify, Rehfeld testified that he didn't know for sure who was with him. The state then showed Rehfeld a copy of the statement.Rehfeld acknowledged that his signature was on the document and that after reading the statement he could recall that the coins had been taken from the three taverns described in the information. Upon being asked whether anyone was with him when he went into one of the taverns to take the coins out of the vending machines, Rehfeld asked the court what would happen if he refused to answer the question. After being advised by the court that he would be held in contempt and would be sentenced, Rehfeld answered, "Yes, somebody was with me. I don't know who. I ate some acid that night, quite a bit of it. I don't even know how I did it, but I did it." Rehfeld was again

shown his statement and was asked whether his answers to the questions propounded by the police were based on his recollection of what had happened on the date of the alleged offenses. Although Rehfeld at first stated that the statement was an accurate recollection of what had happened, he then went on to testify that he would now give different answers to some of the questions "because some of it is false—in this statement." He then attempted to qualify some of the answers he had given to the police in the statement, which answers on their face implicated defendant in all four of the alleged offenses. The state then offered the statement in evidence as a document showing past recollection recorded, and not as a matter of impeachment. On cross-examination Rehfeld further attempted to qualify the statement in such a manner as to eliminate any damaging references to defendant.

The state argues that the statement was properly admitted under the theory that it represented past recollection recorded, citing Maupin v. Mobridge State Bank, 38 S.D. 331, 161 N.W. 332.

The law with respect to the use of records of past recollection has been summarized as follows:

"As the rule permitting the introduction of past recollection recorded developed, it required that four elements be met: (1) the witness must have had first-hand knowledge of the event, (2) the written statement must be an original memorandum made at or near the time of the event and while the witness had a clear and accurate memory of it, (3) the witness must lack a present recollection of the event, and (4) the witness must vouch for the accuracy of the written memorandum." (footnote omitted) McCormick on Evidence, 2d Ed., § 299, p. 712.

See also 3 Wigmore on Evidence (Chadbourn rev. 1970) §§ 734-755. Assuming for the purpose of argument that the statement otherwise met the test of admissibility as past recollection recorded, we conclude that it was not properly admissible under that doctrine because of Rehfeld's equivocation regarding

the truth and accuracy of his answers to the police as recorded in the statement. As was pointed out in the Maupin case, supra, one of the tests for the admissibility of such a recorded recollection is that the witness must be able .to say that it is a true memorandum of the subject matter in question. See also State v. Scott, 31 Ohio St.2d 1, 285 N.E.2d 344; Goings v. United States, 8 Cir., 377 F.2d 753, 760, n. 8. Rule 803(5) of the new Rules of Evidence for United States Courts and Magistrates, effective July 1, 1975, reads as follows:

> "*Recorded recollection.* A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party."

See Note, "Past Recollection Recorded: The 'Forward-Looking' Federal Rules of Evidence Lean Backwards," 50 Notre Dame Lawyer 737 (1975).

In fact, the statement, or at least those parts of it that were material to defendant's alleged participation in the charged offenses, was inconsistent with Rehfeld's testimony at trial. In effect, the state was attempting to use the statement as substantive evidence of the matters stated therein. Unfortunately, the statement was not offered on this theory and the trial court was not given a fair opportunity to make a determination of its admissibility for that purpose. The question now is whether we should uphold the admission of the statement on a theory that runs counter to the settled law of this state, which permits the use of such prior inconsistent statements for impeachment purposes only, with the jury to be so instructed. See State v. Kietzke, 85 S.D. 502, 186 N.W.2d 551; State v. Lapke, 62 S.D. 187, 252 N.W. 38; State v. Raetz, 53 S.D. 291, 220 N.W. 492; Nelson v. Chicago, B. & Q. Ry. Co., 47 S.D. 228, 197 N.W. 288; State v. Callahan, 18 S.D. 145, 99 N.W. 1099. This seems to be the

majority or orthodox rule. As was stated in State v. Kietzke, supra, the minority view, which permits the substantive use of prior inconsistent statements, is supported by most legal commentators. See, e. g., 3A Wigmore on Evidence, (Chadbourn rev. 1970) § 1018, p. 995; McCormick on Evidence, 2d Ed., § 251, p. 601. The use of such prior inconsistent statements as substantive evidence has been held not to constitute a violation of a defendant's Sixth Amendment right of confrontation. California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489. Some courts have held such statements admissible pursuant to the state's evidence code. People v. Green, 3 Cal.3d 981, 92 Cal.Rptr. 494, 479 P.2d 998 (on remand). Other courts have adopted the minority view as a matter of policy. See, e. g., Jett v. Commonwealth, Ky., 436 S.W.2d 788; Gelhaar v. State, 41 Wis.2d 230, 163 N.W. 609; State v. Igoe, N.D., 206 N.W.2d 291. Other courts have reexamined their position and have retained the orthodox rule. See, e. g., Ruhala v. Roby, 379 Mich. 102, 150 N.W.2d 146; State v. Granberry, Mo., 491 S.W.2d 528. See generally Reutlinger, "Prior Inconsistent Statements: Presently Inconsistent Doctrine," 26 Hastings Law J. 361 (1974); Note, "Prior Inconsistent Statements As Substantive Evidence—Missouri Retains the Orthodox Rule," 39 Mo.L.Rev. 472 (1974).

In short, because the question whether we should depart from the orthodox view and adopt the minority view regarding the use of prior inconsistent statements as substantive evidence is one that could have profound implications for the conduct of future criminal trials in this state, we conclude that we should resolve the issue only in a case in which the question was fairly presented to the trial court for determination in the first instance and after a full discussion of the question in the briefs of both parties. Cf. State v. Marchand, Minn., 225 N.W.2d 537.

As an alternative to the past recollection recorded doctrine, the state urges that we uphold the admissibility of the statement on the ground that it constituted a statement against Rehfeld's interests, citing the Federal Rules of Evidence. The rule in question reads as follows:

> Rule 804 "(b) *Hearsay exceptions.* The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:  *  *  *

"(3) *Statement against interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

By its own terms, this rule would be inapplicable in the instant case inasmuch as Rehfeld was available as a witness. Nor would the statement be admissible under Rule 801(d)(1) inasmuch as it was not made under oath at a trial, hearing, or other proceeding, or in a deposition. See United States v. Rivera, 513 F.2d 519 (2 Cir., 1975).

Although there was other evidence of defendant's participation in the charged offenses, that evidence was not so compelling that we could hold that the admission of Rehfeld's statement constituted harmless error.

The conviction is reversed.

All the Justices concur.