THE STATE OF OHIO, APPELLEE, *v.* SCOTT, APPELLANT.

2

(No. 71-730—Decided July 5, 1972.)

. *Mr. Robert L. Brown*, prosecuting attorney, for appellee.

*Messrs. Scanlon, Berger, Garner & Kimerline, Mr. Nelfred G. Kimerline* and *Mr. Steven J. Erlsten*, for appellant.

LEACH, J. The principal issue involved in this case is whether the rule of evidence, referred to as "past recollection recorded," is recognized in Ohio, whether it may be employed in a criminal trial, and whether, if so employed, such rule is violative of a defendant's Sixth Amendment right of confrontation, including the opportunity of cross-examination. Although such rule of evidence has been specifically approved by the highest courts of most of our sister states, it appears that this issue has not heretofore been directly passed upon by this court.

The problem of "past recollection recorded" arises in this case from the testimony of Carol Tackett, a witness for the state. Miss Tackett had been a friend of the defendant and had held a conversation with him at the theater just prior to his arrest. She gave a handwritten, signed statement to the police concerning this conversation the day after the arrest. A portion of the statement read as follows:

"About 5 min. before the show was over Randy came in. I got up to talk to him. He had been drinking so I didn't really believe what he said. He had told me he wrecked a car and he shot a guy. I just looked [at] him and he asked me to help him. I then asked him if he was telling the truth. When he said he was I turned away from him and ran out of the theater and got in the car with my sister and we tried to find Gary [one of the policemen] to tell him."

4

This statement of Carol Tackett was admitted in evidence over the objection of the defendant. At the time of its admission Miss Tackett was on the witness stand. Prior to its admission she had testified, in part, as follows:

"A. Well, I sat through the whole show and, well, except for the last part of it. Randy was standing in the doorway inside the show and I got up and I was talking to him in the show. That was about five, ten minutes before the show ended or something like that.

"Q. All right. Now what was this conversation that you had with him at that time?

"A. Well, he wanted to know if I had a car and I told him no. And he wanted—I said that Linda had a car and he wanted to know if he could go with us and I said no that he couldn't go with us.

"Q. What else was said at that time?

"A. Why, he was kind of upset and everything and that's when we heard the sirens outside and stuff.

"Q. Did you have any other conversation with him?

"A. Well he said something about somebody being shot at that time and I left the show right after that with my sister and Linda.

"Q. Do you recall the police coming in the movie at that time?

"A. No. I wasn't there at that time.

"Q. You say you left before they came or you didn't see any police come in?

"A. Yes. I left before that.

"Q. Now then, can you tell us what the words were that Randy used concerning somebody being shot?

"A. I can't remember exactly what they were, just that it was something about that.

"Q. Do you recall being interviewed by the police following this time?

"A. Yes.

"Q. Do you recall giving a statement to the police?

"A. Yes.

"Q. I will hand you what has been marked as state's Exhibit 17 and ask if you can identify what that is.

"A. That's the statement that I made out for the policeman.

"Q. Is this your handwriting on here?

"A. Yes.

"Q. According to this, this was made on the 24th day of November of 1969. Would that be correct?

"A. Yes.

"Q. And down here, this signature here, whose signature is that?

"A. It's mine.

"Q. Now then, at the time that you made this statement, Carol, did you make this statement according to what your knowledge was at that time?

"A. To the best that I remembered.

"Q. Then would you say that this was a true statement that you made at that time?

"A. Yes.

"* * *

"Q. Now Carol, at the time that you made this statement which is identified as state's Exhibit 17, was your memory better than it is now?

"A. Yes."

The state argues that the statement was properly admitted under the rule of "past recollection recorded." The defendant argues that the rule of "past recollection recorded" has not been recognized in Ohio, that the statement was "hearsay" and that its admission in evidence deprived the defendant of his constitutional right of confrontation and cross-examination. We hold that the statement was properly admitted as "past recollection recorded," and that its admission did not violate defendant's constitutional rights.

While the rule of "past recollection recorded" is historically an offshoot from the practice of permitting a witness to refresh or revive his memory by examination of his own written memorandum ("present recollection refreshed"), it is fundamentally different in legal concept.

In the "present recollection refreshed" situation, the witness looks at the memorandum to refresh his memory

of the events, but then proceeds to testify upon the basis of his present independent knowledge. However, in the "past recollection recorded" situation, the witness' present recollection is still absent or incomplete, but his present testimony is to the effect that his recollection was complete at the time the memorandum was written and that such recollection was accurately recorded therein.

The requirements for admitting a statement as past recollection recorded have been stated in different ways. In McCormick on Evidence (2 Ed.) 712, the requirements are listed, as follows:

"As the rule permitting the introduction of past recollection recorded developed, it required that four elements be met: (1) the witness must have had firsthand knowledge of the event, (2) the written statement must be an original memorandum made at or near the time of the event and while the witness had a clear and accurate memory of it, (3) the witness must lack a present recollection of the event, and (4) the witness must vouch for the accuracy of the written memorandum."

Those four requirements embody all the generally recognized requirements for the admission of a statement as "past recollection recorded."

In an annotation in 82 A. L. R. 2d 520 (supplementing 125 A. L. R. 80), the statement appears: "It is now almost universally held that upon the laying of a proper foundation a witness may testify from a written memorandum, although it does not recall the facts to his memory."

Volume III, Wigmore on Evidence (Chadbourn Rev.), pages 77-124, contains an analysis of the historical development, the rationale and the scope of the present use of such rule. At page 84, it is stated: "It cannot be doubted that the use of a recorded past recollection (under the conditions to be examined later) now occupies a firm and unassailable place in our practice and doctrine."

Generally, the conditions outlined by Wigmore are that the witness has no present recollection of the matter, the past recollection must have been written down, the recollection must have been fairly fresh when recorded, the

witness must verify the correctness of the record; the original record must be used when available, the record must be shown to the opponent on demand for inspection and cross-examination and the record may go to the jury. *Id.*, 93-113. As can be seen, these conditions do not differ in material respect from the four requirements as outlined above by McCormick.

See, also, 98 Corpus Juris Secundum 88-103; 58 American Jurisprudence 328-339; 2 Underhill's Criminal Evidence (5 Ed.) 1231-1233.

So far as case law is concerned, we believe that the analysis of the problem by Lockwood, J., in the frequently cited case of *Kinsey* v. *State* (1937), 49 Ariz. 201, 219, 65 P. 2d 1141, is the clearest exposition thereof.[1]

[1]Judge Lockwood stated:

"Regardless of the weight of the authority on the question, it seems to us that upon every principle of logic and common sense, evidence of this class should be admissible. It is an undisputed and undisputable fact that the human memory weakens with the passage of time, more with some individuals, less with others, but to some extent with all, and that a written record, unless changed by extrinsic forces, remains the same for all time. It would seem, then, that such a record, made contemporaneously with the event by a witness who was honest and capable of observing accurately what happened, would be far better proof of the true facts than the present recollection of that same witness six months later, whether unrefreshed or refreshed by some extrinsic aid, but still in the last resort presumably independent in its nature. There are but two objections to the use of such evidence which have been seriously urged. The first is that it is hearsay in its nature, and the second, that the witness who vouches for the record cannot be properly cross-examined We think both of these objections are without foundation The recorded memory of the witness is just as much the statement of that witness as to what he personally saw or heard as is his present independent recollection of the same fact. We think the confusion as to hearsay has arisen from cases where it was endeavored to prove the authenticity of the memorandum which was offered in evidence by some person other than the one who made it or under whose direction it was made. In such a case, of course, the memorandum would be hearsay just as much as if there were an attempt to prove by a third person an oral statement of the person who made the memorandum, in regard to the facts in issue. But when the person who witnessed the event testifies to the accuracy of the memorandum as made, that memorandum is just as

Thus, from the point of view of a procedural rule of evidence we are of the opinion that the rule of past recollection recorded is based upon sound logic and should be specifically recognized with approval in this state.

To the extent that appellant is asserting that the use of such rule in a criminal case would result in a violation of the defendant's Sixth Amendment right of confrontation, including the opportunity of cross-examination, we reject such assertion upon the basis of the holdings of the United States Supreme Court in *California* v. *Green* (1970), 399 U. S. 149, and *Nelson* v. *O'Neil* (1971), 402 U. S. 622, 29 L. Ed. 2d 222.

In *California* v. *Green*, the defendant was accused of furnishing marihuana to a minor, partly upon the basis of an unsworn statement, not subject to cross-examination, made by the minor himself while he was under arrest for selling the drug. When the minor, not a co-defendant, took the stand at the defendant's trial, he claimed that he could not remember any of the incriminating events described in

---

much direct and not hearsay evidence as the language of the witness when he testifies to his independent recollection of what he saw. The objection in regard to cross-examination, on its face, might seem to have some weight, but we think a careful analysis of the question will show that it also is unfounded. What is the purpose of cross-examination? Obviously it is to convince the triers of fact, in some manner, that the testimony of the witness is untrue, for if the cross-examiner accepts it as true, there will be no need nor desire for cross-examination. How, then, may the truthfulness of the evidence of a witness be attacked through cross-examination? It seems to us that all attacks thereon must be reduced to one of three classes: (a) Upon the honesty and integrity of the witness; (b) upon his ability to observe accurately at the time the incident occurred; and (c) upon his accuracy of recollection of the past events. When a witness testifies as to his present recollection, independent or revived, he may, of course, be cross-examined fully on all three of these points. When he testifies as to his past recollection recorded, he can be examined to the same extent and in the same manner as to the first and second of these matters. He cannot well be cross-examined on the third point, but this is unnecessary, for he has already stated that he has *no* independent recollection of the event, which is all that could be brought out by the most rigid cross-examination on this point when the witness testifies from his present recollection, independent or revived."

his out-of-court statement, although he admitted having made the statement and claimed that he believed it when he made it. The earlier statement was then introduced in evidence to show the truth of the matter asserted and the Supreme Court held it admissible for that purpose. The court, at page 158, concluded "that the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination." Acknowledging that the out-of-court statement had not been given under oath, the opinion, at pages 158-159, stated that "as far as the oath is concerned, the witness must now affirm, deny, or qualify the truth of the prior statement under the penalty of perjury." Additionally, the court rejected the assertion that opportunity for cross-examination must be accorded contemporaneous with the original statement so long as the accused "is assured of full and effective cross-examination at the time of trial."

Thus, we find no constitutional inhibition to the use of "past recollection recorded." Having previously concluded that it is a sound rule of procedural evidence, we reject the claim of appellant that the admission of evidence in conformity with such rule would be erroneous in a criminal case in Ohio. Our decision in that respect is not in conflict with our decisions in *State* v. *Tims* (1967), 9 Ohio St. 2d 136, and *State* v. *Dick* (1971), 27 Ohio St. 2d 162.

*State* v. *Tims* involved applicability of the Business Records as Evidence Act, R. C. 2317.40, to criminal proceedings. There, the information sought to be proved by a hospital record had been entered by a physician who was not called as a witness. The fundamental difference in the instant case is that, here, the person who made the record actually testified as to its authenticity and was subjected to cross-examination relative thereto.

In *State* v. *Dick*, the person who allegedly made the extra-judicial, unsworn statement, introduced by the prosecution at a second trial as substantive proof of guilt of the defendant, had denied the statement at a previous trial, and was not available for cross-examination during the

10

second trial, having refused to be sworn and having asserted a Fifth Amendment privilege against self-incrimination.[2]

The question remains as to whether the signed statement of Carol Tackett meets the requirements of past recollection recorded. We find that it does. The statement consisted of facts of which the witness had firsthand knowledge; the written statement was the original memorandum made near the time of the event while the witness had a clear and accurate memory of it; the witness lacked a present recollection of the words used by Randy Scott in the conversation; and the witness stated that the memorandum was accurate.

Thus, we find that the admission of the signed statement of Carol Tackett as past recollection recorded was proper, and that such did not amount to a denial of the defendant's right of confrontation or cross-examination.

Without extended discussion of the evidence, we should add that we believe the introduction of the written statement of Carol Tackett could not be considered truly prejudicial in any event. R. C. 2945.83(C). Other evidence of guilt, admitted without objection, was overwhelming. Even if admission of the statement could be considered erroneous, we would conclude, from a review of the entire record, that such error would be "harmless beyond a reasonable doubt." *Chapman* v. *California* (1967), 386 U. S. 18; *Harrington* v. *California* (1969), 395 U. S. 250; *Schneble* v. *Florida* (1972), U. S. , 31 L. Ed. 2d 340.

Appellant also asserts that the judgment of conviction should be reversed upon the basis that the trial court, prior to the second trial, refused the request of the newly-appointed co-counsel for a complete transcript of the first trial.

We reject that assertion upon the basis of the decision

---

[2]In *Nelson* v. *O'Neil, supra*, the statement was also denied by its alleged maker, a co-defendant, but the United States Supreme Court nevertheless held that its introduction in evidence did not violate the Confrontation Clause of the Sixth Amendment so long as the co-defendant took the stand and thus could be cross-examined at the trial.

of the United States Supreme Court in *Britt* v. *North Carolina* (1971),   U. S.   , 30 L. Ed. 2d 400. There, as here, the first trial ended in a deadlocked jury and prior to the second trial the defendant filed a motion alleging that he was indigent and asking for a free transcript of the first trial. In affirming the judgment of conviction therein, the Supreme Court stated that there were two main factors relative to the determination of the need of such a transscript: "(1) The value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative decisions that would fulfill the same functions as a transcript." In *Britt*, it was conceded in argument that the court reporter would "at any time have read back to counsel his notes of the mistrial, well in advance of the second trial, if counsel had simply made an informal request." In the instant case, the same concession, in effect, was made. Moreover, even now, no specific claim is made as to any alleged discrepancies of testimony between the first and second trial or what specific "value" such a complete transcript would have at trial, independent of the overworked concept that what the "rich man" can buy must *always* be supplied to the "indigent."

Appellant also asserts that the trial court committed error in the admission of certain physical exhibits and that the jury was necessarily prejudiced against the defendant as the result of an outburst by defendant's mother in the presence of the jury when they were leaving the courtroom for a recess. We find no error in the trial court's ruling as to the admissibility of such evidence, nor in its denial of defendant's motion for mistrial.

For the reasons heretofore stated, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., SCHNEIDER, HERBERT and STERN, JJ., concur.

CORRIGAN and BROWN, JJ., dissent.

CORRIGAN, J., dissenting. It seems to this member of the court that a can of evidential worms is being opened and foisted into the soil of our trial procedure in Ohio with this innovative ruling adopting the precept of past recollection recorded into the criminal law of Ohio under the facts in this case. And, given time, they will emerge from that very soil in different fact situations and present problems of constitutional dimension to irk this court.

In the instant case, the written statement seems to me to be objectionable for at least four reasons:

(1) the statement was not made in the presence of the defendant;

(2) admitting the written paper as evidence results in it going to the deliberation room with the jury and a patent danger is that it will be given undue weight by the jury;

(3) it places special emphasis on the facts recorded in the statement as against other facts testified to and contrary to the written statement; the written statement, likewise, gains an excessive value which ordinary testimony unreduced to available written form cannot have;

(4) finally, under the traditional formulation of the rule, before a past recollection recorded could be received in evidence the witness who made it must testify that he lacks present memory of the events and therefore is unable to testify concerning them.

Here, the witness, Carol Tackett, testified for the state. She was the girlfriend of the defendant. She did not say, unambiguously, that she had no present memory of the events recorded in her statement. The following excerpts constitute her entire testimony bearing on recollection preceding the admission of her written statement:

"Q. Did you have any other conversation with him?

"A. Well, he said something about somebody being shot at that time and I left the show right after that with my sister and Linda.

"* * *

"Q. Now then, can you tell us what the words **were** that Randy used concerning somebody being shot?

"A. I can't remember exactly what they were, just that it was something about that."

Then the written statement was identified and introduced in evidence.

Certainly, in that state of the proof, the witness did not expressly say that any present memory of the facts recorded was absent or that she had no independent recollection of the event. More importantly, there was no effort made by the prosecutor to refresh her recollection from her prior written statement as to the facts therein. She was not asked if the written statement revived her memory.[3]

The admission of the statement under the facts in this criminal case was, in my view, prejudicially erroneous to the substantial rights of defendant, and I would reverse the judgment of the Court of Appeals and remand to the trial court for further proceedings.

BROWN, J., concurs in the foregoing dissenting opinion.

---

[3] *Russell* v. *Hudson River Rd. Co.* (1858), 17 N. Y. 134, 140. It is "an indispensable preliminary to the introduction" of such memoranda as evidence "that the witness is unable with the aid of the memorandum to speak from [present] memory as to the facts."

*Pickering* v. *Peskind* (1930), 43 Ohio App. 401, 413. "Memorandum used by witness to refresh recollection *held* admissible as auxiliary to testimony, where witness had no independent recollection of matter, but had to depend on memorandum made at time." The witness "* * * cannot testify to an existing awakened knowledge of the fact independent of the memorandum * * *."