JOURNAL ENTRY AND OPINION
Defendant-appellant Michael Woods appeals from his conviction for one count of felonious assault. The appellant was sentenced to a six-year term of incarceration. The appellant sets forth three assignments of error. Seeing no cause for reversal, we affirm the appellant's conviction.
On November 1, 1999, an altercation occurred between the victim, Terry Cowart, and the appellant. The two had been friends and, at least for some portion of time, lived in the same duplex. Both men were involved in painting and renovating houses for a living. The victim was seeing the appellant's mother, and according to the victim, this was a source of tension. The appellant testified at trial that he has little or no independent recollection of the events which lead to his hospitalization. The record amply demonstrates that Mr. Cowart has a criminal history, a long history of alcohol and substance abuse, and has suffered other head injuries. Mr. Cowart's memory was greatly impaired prior to this incident and certainly it did not improve afterwards. Mr. Cowart does remember speaking to the appellant and that the appellant snapped (T. 37-38).
At trial, the state inquired as to whether or not Mr. Cowart recalled making a statement to Detective LaRich of the Cleveland Police Department. Mr. Cowart did not remember making or signing the statement (T. 40), however, he did acknowledge his signature on the statement (T. 41, 43). Mr. Cowart acknowledged that the police spoke to him afterwards, when he was in bed and he was sick (T. 42, 43). The state further inquired:
 Q: And you can take a look at do you see the question saying: After having read this statement, is it the truth? And it's signed by you, Terry Cowart, and you answered yes? You see what I'm saying now where you see your name where you admit that yourself? It says: having read this statement, is it the truth? And you answered yes. Do you see that?
A: Yes.
 Q: Right. So when you signed at the time on November 2nd, you said that this was the truth, right?
MR. MORONEY: Objection, Judge.
 THE COURT: Overruled. Counsel, do you need permission to treat this witness as hostile? Permission granted.
 Q: Yeah, you remember talking to the detective about this case, right, and you signed it? You just said you signed it with the detectives on November 2nd, right.
A: Uh-huh.
THE COURT: I'm sorry, is a that a yes or a no?
THE WITNESS: Yes.
 Q: When you signed it, you wouldn't be lying then. November 2nd, you would be telling the truth to a police officer of the State of Ohio. You wouldn't have no reason to lie to a police officer, would you?
 A: No. I'm not a police officer, but I just can't the delusion in me, I was weak at the time.
Q: You were delusional?
 A: Yeah. It was a pretty bad scar I had. I can't you know, it was.
 Q: But you wouldn't intentionally lie to a police officer?
 A: Well, I wouldn't lie to well, I wouldn't lie to nobody.
Q: You understand the rules of perjury?
A: I wouldn't lie to nobody. I just don't remember.
 Q: I understand. That is why we have this recorded recollection. That is what will help us through today. You remember signing this? You said that. You wouldn't lie to a police officer?
A: That is my signature. I must have signed it.
 Q: You said you read this statement, and that is the truth and you answered yes?
A: Yes.
(T.43-45). The testimony demonstrated that the victim's recollection was not refreshed by viewing the police statement. Evid. R. 612. Counsel entered into a discussion on the record and subsequently the prosecutor then requested that the police statement be considered a past recorded recollection under Evid.R. 803(5). The court granted permission, but noted the appellant's objection. The following statement was read into the record:
 I'm Terry Cowart. On Monday, about 1:30 p.m. I was sitting on the porch at home, 11002 Ashbury, my girlfriend's house, when her son Michael Woods came up on the porch with a bat in his hand and started to swing at me striking me in the kneecap, then the arm and then my head.
 As tried to walk away, he threw a brick at me, and when I came to, my ear was hanging off.
 He came up to me again. I pulled my knife there is an initial TC above it, because presumably the witness made a correction. It says knife that I work with. He chased me into the Arab store. I asked to use the phone. They had none. That's when Michael left.
 I went to a neighbor's house and she called the police for me. I then saw Michael coming up the street with a beer and a bat in his hand. He said, I ought to going on and kill him.
 The ambulance pulled up and Michael ran. The next thing I know the police pulled up with Michael in the car. They asked me if I had knife. I told them yes and gave them the knife.
 I went to Mt. Sinai Hospital where treated me for stitches to the ear and the back of my head. I had bruise and contusion on my arms and legs.
Question: Why did Michael do this to you?
 Answer: He did this because he blames me for coming between his mother and him. He has been threatening me for about three weeks that he was going to get me.
 Question: Did you go after Michael with a knife while he was on the porch?
Answer: No.
 Question: Did you pull the knife as Michael approached you on the porch?
Answer: No, I did not.
Question: At what point did you pull the knife?
 Answer: After he had beat me. As I was trying to get away, but I never swung it at him.
 Question: Do you want to press charges on Michael Woods for felonious assault?
Answer: Yes.
 Question: Do you care to add anything further to your statement at this time?
Answer: No.
And there is another question:
After having read this statement, is it the truth?
Answer: Yes.
 Signed Terry Cowart. It was witnessed by Detective Ron LaRiche of the Fifth District Cleveland Police Department.
(T.50-52).
Cleveland Police Officer Michael Veltre testified that he and his partner responded to the 11002 Ashbury area on November 1, 1999, for a fight in progress. When he arrived five minutes after the call, there was a group of juveniles present who gave a description of the appellant and indicated the direction he had taken. The officers first talked to the victim who was in the EMS unit. Officer Veltre described Mr. Cowart's condition as very bloody. The officer stated that the victim seemed dazed, had scratches on his face, and had a bloody left ear. Officer Veltre had the impression that the appellant had just been beaten. Mr. Cowart provided them with a name and the description of the person who assaulted him. Upon request, the victim surrendered his knife to the officers.
When the officers tracked down the lead given by the juveniles, they found the appellant. The appellant had no weapons on his person and none surfaced during a cursory search of the area. The appellant had suffered no injuries and his demeanor was more aggressive than that of the victim. The appellant admitted to having an altercation with Mr. Cowart and indicated that he had used only his hands.
After booking the appellant, Officer Veltre proceeded to Mt. Sanai to further interview the victim. The injury to the victim's ear appeared to be severe. There was an injury to his leg and the appellant had abrasions. Officer Veltre could recall three separate places of injury.
The appellant testified on his own behalf. Woods testified that the victim happened to be walking by when Woods needed help painting a duplex owned by his sister. Mr. Cowart assisted him by painting the peak of the house. The next day, Woods again saw the victim and learned that he was homeless. Woods offered him a place to stay and gave him clothing and food. A month prior to this incident, the appellant asked Woods to leave. It was not until after the altercation that Woods learned that Mr. Cowart had a relationship with his mother.
On the day of the fight, the appellant was sitting on the porch. Mr. Cowart approached and they began discussing a pair of boots that the appellant wanted the victim to return. Mr. Cowart was upset with the appellant and eventually pulled out his knife. The appellant retreated from the porch and headed to his neighbor's home. Mr. Cowart followed him off of the porch and as he approached, colorfully threatened to cut him with the knife. At this point the appellant felt threatened so he picked up a rock and threw it at Mr. Cowart. The rock struck Mr. Cowart who then fell to the ground. Mr. Cowart stood back up and went to the corner store where he purchased a 40 ounce can of beer. Another neighbor telephoned for an EMS crew. The appellant testified that at no time was there a baseball bat used in this fight.
The appellant testified that he left the scene as EMS arrived, but that he did not flee. He stated that he could have run from the scene, but because he believed he had done nothing but defend himself, he chose to stay.
The appellant sets forth three assignments of error.
The first assignment of error:
 THE TRIAL COURT ERRED BY PERMITTING THE VICTIM'S STATEMENT TO BE READ INTO EVIDENCE.
The appellant asserts that the court erred in permitting the victim, Terry Cowart, to read into evidence the statement the police obtained from him. The appellant argues that the court erred in finding the statement to be admissible under Evid.R. 803(5), the past recorded recollection exception to the hearsay rule.
In analyzing this assignment of error, it is noteworthy that the reading of a sworn statement may be made to refresh the author's memory under Evid.R. 612 or as a past recollection recorded pursuant to Evid.R. 803(5). The latter was not recognized in Ohio until the Supreme Court accepted it in State v. Scott (1972), 31 Ohio St.2d 1. In Scott, the court held at syllabus one that:
 1. A memorandum made by a witness may be admitted in evidence in a criminal case as past recollection recorded" if the witness had first-hand knowledge of the subject matter of the memorandum, the memorandum was made at or near the time of the event and while the witness had a clear and accurate memory of it, the witness lacks a complete present recollection of the event, and the witness testifies on the stand that the written memorandum is accurate.
The court, at syllabus two, determined that where the four-part test set forth in Scott at syllabus one is met, there is no deprivation of the right to confrontation where the witness is on the stand available for full cross-examination by the defendant. See also State v. McLean (June 16, 2000), Lake App. No. 98-L-239, unreported and State v. Durden (May 14, 1992), Cuyahoga App. No. 60578, unreported.
In the case sub judice, the testimony of the victim met the four-part test set forth by the Ohio Supreme Court in Scott, supra. The record demonstrates that: 1) Mr. Cowart, as the victim, had first-hand knowledge of the altercation which was the subject matter of the police report; 2) his statement was taken the next day by the police; 3) he lacked a complete present recollection of the event; and, 4) he testified on the stand that he did not lie in the police report. Based upon the victim's testimony, the trial court did not err in admitting the police report as an exception to the hearsay rule under Civ.R. 803(5), past recollection recorded.
The appellant's first assignment of error is overruled.
The second assignment of error:
 THE VERDICT OF THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
The appellant states that the testimony of the victim, Mr. Cowart, was not credible because he could not remember the assault and that the testimony of Officer Veltre should not be relied upon because he did not witness the attack. The appellant points out that the police recovered no baseball bat, it was the victim who was in possession of a knife with a four-inch blade, the prosecution did not call eye witnesses, the prosecution did not call the officer who actually recorded Mr. Cowart's statement, and that the appellant admitted to throwing the rock which caused the victim to fall to the ground. The appellant argues that these factors are indicia which substantiate his testimony.
The Supreme Court, in State v. Thompkins (1997), 78 Ohio St.3d 380
illuminated its test for manifest weight of the evidence by citing to Black's Law Dictionary (6 Ed. 1990) at 1594:
 Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them.
 Weight is not a question of mathematics, but depends on its effect in inducing belief.
Thus, as the concurring opinion noted, when deciding whether a conviction is against the manifest weight of the evidence, an appellate court determines whether the state has appropriately carried its burden of persuasion. The only special deference given in a manifest weight review attaches to the conclusion reached by the trier of fact. Thompkins, (Cook, J., concurring) citing to State v. DeHass (1967),10 Ohio St.2d 230.
Here, the case was tried to the bench. The court heard evidence which would entitle it to find that the appellant was the perpetrator and Mr. Cowart the victim. It is clear that the victim had absolutely no memory of the fight, but the court was entitled to rely on the police statement and find that the state had met its burden of persuasion. Officer Veltre did not observe the fight, but did arrive shortly thereafter. He testified that a description of the perpetrator was given to him by both the victim and bystanders. This description matched that of the appellant. The appellant correctly points out that the police recovered no baseball bat, but Officer Veltre affirmed that the search was merely cursory. It is also true that it was the victim who was in possession of a knife with a four-inch blade; however, the knife was readily turned over to the officers. And yes, the prosecution did not call eye witnesses, however, the appellant could have used his subpoena power to call the same witness and failed to do so.
The appellant's conviction is not against the manifest weight of the evidence.
The appellant's second assignment of error is overruled.
The third assignment of error:
 THE TRIAL COURT ERRED BY FAILING TO NOTIFY THE DEFENDANT OF THE BAD-TIME AND POST RELEASE CONTROL PROVISIONS OF R.C. 2929.19(B)(3).
The appellant asserts that the record is devoid of any mention of the required notification under R.C. 2929.19(B)(3) and that this cause should be remanded for resentencing.
R.C. 2929.19 sets forth the requirements the trial court must follow when sentencing a defendant. R.C. 2929.19(B)(3)(b), required that the trial court inform a defendant that, if a criminal act was committed while serving the term of imprisonment, the parole board was administratively entitled to extend the sentence as provided for in R.C.2967.11. The Ohio Supreme Court has since held R.C. 2967.11 to be unconstitutional. State ex rel. Bray v. Russell (2000), 89 Ohio St.3d 132. Thus, the error committed by the trial court in failing to notify the appellant that his sentence could be extended pursuant to R.C. 2967.11 is harmless.
Turning to R.C. 2929.19(B)(3)(c), a reading of this section of the statute indicates that the court is required to notify a defendant that a period of post-release control pursuant to R.C. 2967.28 will be imposed following the release from prison. The trial court failed to do so, and this case must be remanded for resentencing.[1]
Judgment affirmed and case is remanded for resentencing.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for resentencing.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 __________________________________ JAMES D. SWEENEY, PRESIDING JUDGE
MICHAEL J. CORRIGAN, J., and COLLEEN CONWAY COONEY, J., CONCUR.
[1] See, Woods v. Telb (2000), 89 Ohio St.3d 504.